Chief Justice Robertson,
delivered the opinion of the court.
To a petition and summons brought by the president and directors of the bank of the commonwealth, against John T. Mason, William T. Barry and Thomas Triplett, on a promissory note executed by the defendants to the plaintiffs for $282, payable a hundred and twenty days after date, at the Muntster- *550 ling Branch. Triplett pleaded that, <it the time the note was executed by him, he was a director of the bank of the commonwealth; and was, therefore, not competent to sign said note as security; and that he did sign it as a security, and not as a principal.
The circuit court overruled a demurrer to the plea, and thereupon rendered judgment in favor of Triplett,, to reverse which, this writ of error is prosecuted.
Were it conceded that Triplett could not be a plaintiff, as a director, and a defendant in his own right; and that, therefore,if he were a director when the suit was brought, or even when the cause of action accrued, the action is not maintainable;, nevertheless the plea does not present any such bar; for it does not aver that Triplett is one of the plaintiffs, or that he was a director when the suit was brought, or when the cause of action accrued: and,, besides, it is evident that the plea was not drawn for any such purpose, as that of presenting such a defence as that here alluded to.
But the aim of the pleader was to shew that the note was void as to Triplett, in consequence of the facts alleged: and, in this point of view, the plea presents a new question, hitherto untouched..
The seventh section of the charter declares that, “none of the said officers shall become security, or be bound for any debt contracted for, or on behalf of, the said bank; except his or her own accommodation.” And the tenth section of a supplemental act, declares, that, “neither the president, nor any director, or other officer of the principal bank, or any branch thereof, shall be bound as security for any debt contracted with said principal bank or any branch thereof.
If there had been nothing more in the foregoing interdiction, than the declaration that “none of the said officers shall become security,” we could not doubt that such a provision should be construed as merely directory; and that an officer of the bank, who had been taken as a surety, contrary to the legslative advice, would, like others, nevertheless, be bound by his undertaking. In Bartlett vs. Vinor, Carth. 252, Holt, C. J. laid down the following rule: *551 “Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute is a void contract, though the statute itself doth not mention that it shall be so, but only inflicted a penalty on the defaulter; because a penalty implies a prohibition, though there are no prohibitory words in the statute.” Rutherforth, in his Institutes, investigates this whole subject, in a philosophical and masterly manner, on principle; and states some qualification of the rule prescribed by Holt. This is not a fit occasion for attempting any analysis or authoritative exposition of an important branch of jurisprudence, which has not hitherto been distinctly and firmly settled in all its bearings. In the foregoing extracts from the statutes there is no denunciation of any penalty; nbr is there any express prohibition, except what may be considered as a direction to the officers themselves. They have no personal interest in the bank; and, perhaps, would not sustain any of the loss which might result from the invalidity of contracts, by any of themselves, as sureties to the institution. They are only the agents of the state; she is the constituent, and the party interested in the stock, and in the inviolable observance of the foregoing rules, prescribed by her will to her agents, for their government, and for her security. It may sometimes be their interest to disregard the rule; and it would be more especially their interest to do so, if contracts made in violation of it, should be void. Now the chief reason why contracts in violation of law may be void, is, that by declaring them void, all persons who may be prompted by' their interest to disregard the prohibition by making them, may be deterred by an apprehension of certain loss: and this personal interest is the principal sanction for the conservation of the public policy. Thus when smuggling is prohibited by law, if all contracts for contra-brand goods, imported in violation of the law, be void, those whose cupidity might prompt them to smuggle goods, would be deterred from doing so, in proportion to the probability of losing the benefit of their sales. But the principle, thus illustrated, does not apply to this case. It was known that the officers might be annoyed, the affairs of the bank embarrassed, and its administration perverted, if its managers *552 S^0tl^ permitted to lend their credit and influence to those who should desire to obtain its accommodations. It might be the wish, and even the interest of some of them, to secure indulgences to their friends, and advantage indirectly to themselves, bj the credit and functional influence of their own names; and thus there might be danger of injustice, favoritism, injurious combinations, and great loss to the commonwealth. But if an officer, upon whose credit as surety, money had been loaned, by the directory, violation of the charter, should not be legally responsible for the debt, it would have been much better for the legislature to have said nothing on the subject; for the assurance of irresponsibility, would, itself, encourage and facilitate the practices which •the legislature intended to prevent: and, so far, the precautions of the legislature would, by the impunity which they would secure, invite the abuses which they aimed to repress.
The legislature had a right to declare, that, if any officer of the bank should be taken as a security, his contract should be void. But such an intention is so inconsistent with legislative prudence, and so incompatible with reason and policy, and the end contemplated, that we do not feel at liberty to give such a construction, if any other be allowable consistently with the language which has been employed.
The provision in the seventh section of the charter applies to the mother bank, and includes all contracts by officers of the bank, to the directory; excepting only, those made for their own accommodation. The provision in the tenth section of the supplemental act, includes all the officers of the principal bank, and and of all its branches; and applies only to sure-tyships: and each section declares, in substance, that no officer of the bank shall ilbe bound” by any contract, as surety, to the bank. But we cannot suppose that, by those expressions, the legislature intended to declare, that if an officer of the bank should be permitted to become a surety to the bank; and should, thereby, enable a friend to draw money from the bank, he should not be, in any event, liable, upon his note, for the amount thus drawn out by his intervention and procurement. We rather interpret the *553 words, all taken together, to import, or to have been intended to declare that the directors should not take any officer of the bank, as a surety; or, in other words, that no such officers should be permitted to become bound, as a surety. Thus the sections will harmonize and accord with justice and sound policy, and the obvious end of their enaciment. Then we understand the two sections, in pan materia, to be intended to say to the directors, and every officer of the bank, “no one of you shall, without a breach of duty and contempt of the legislative will, become surety to the bank; and no board of directors shall, without the like disregard of law, permit any officer of the bank to bind himself as surety to the bank; or shall receive any such officer as a surety.
This language would imply, that an officer of the bank, if accepted as a surety might, thereby bind himself, or become “bovndf and that it was the aim of the legislature to prevent such engagements, by instructing the officers not to enter into them, or permit the obligations, which would result from them, to be incurred. The enactments are directory and cautionary; otherwise they are incongruous and would tend to frustrate their own design.
The charter also declares that no director shall be permitted to borrow more than ‡2000; that no loan shall be made to any corporation, foreigner, or foreign government. Now, surely, if loans should be made in violation of these provisions, the contracts would not be void, but might be enforced.
These enactments are directory: and so, we think, those quoted from the seventh and tenth sections should be deemed.
If an officer of the bank shall disregard the express will of the legislature, he will be guilty of malfeasance, for which he would be removable, and perhaps otherwise responsible. But the undertaking to the bank, which has been improperly permitted, would not be therefore void.
It cannot be reasonablo or proper, that a director should violate his duty, and then, by taking advantage of his own wrong, escape under cover of lavs •from the liability, the tender and acceptance of *554 which enabled his friend to borrow money from the 0f which he was one of the guardians, entrusted with great power and confidence, ft is much more and reasonable that he should be responsible for the debt, for which he was permitted to become “bound,” as well as otherwise liable, for his breach of duty; together with the directors who received him as surety.
To a »nit, instituted by the President and Director* of the Bank of 'the Commonwealth, pira, by one of the def’ts. “that -at -time the note Sued on was executed ■ be was a Di’reci~p Bank of tha Commonwealth and therefore not competent to siun said note no a surety, and that he ^"mníety ’«nd not as a prin-«^demurrer”*
*554 We are, therefore, of opinion, that the contract by Triplett as surety is not void, but is as binding on him as it would have been, had he not been a director.
The fact that he was a director, and that the note was made payable to the directors, is not now material. In one sense he was an obligee, as well as an obligor; but the note was made payable to a corporation and his successor is as much an obligee as he was, and in the same sense. Were it even conceded (but we are not prepared to concede) that a suit, by such an obligee, against such an obligor, could not be maintained, in consequence of a confusion of debtor and creditor; the judgment on the demurrer would still he erroneous. The plea, as already suggested, does not present the pointso as to authorize a decision upon it. Triplett was a director appointed for one year: the plea does not aver that the note became due before the expiration of his year; and it seems that this fact would be material.
In Lord Raymond (515) two Judges against Holt, decided that the confusion of obligor and obligee could not affect the obligation, when it was not due until after the death of the party, who was both an obligor and an obligee; because, when the cause of action accrued, there could be no confusion of debtor and creditor, and no obligee would have to sue himself. But Holt dissented on the ground that the bond „ was “ debilum in presentí,” though “ solvendum in - futuro.”
The principal reason why a bond in which the same person is an obligor and oblgee, has no legal obligation, is, because a person cannot maintain a suit against himself. If Triplett’s year had expired before his note was due, he could not be a plaintiff unless he had been re-appointed; and then he might have sued as any other successor could.
Criltenden for plaintiffs; Triplett for defendant.
If the fact, that an obligee, who is also an obligor, may release the obligation, be any reason why such an obligation is generally not binding in law: that reason could not apply here; because, one director could not release a debt due to the bank.
. ■ , 7-7 But the suit is m the corporate name, and not in the individual names of the president and director.
, , , , Wherefore the plea cannot be sustained on any ground.
Judgment reversed, and cause remanded, with instructions to sustain the demurrer to the plea.